## Lamb's Appeal.    Mapother's Estate.

1. A guardian received stocks as part of his ward's estate, sold them and kept his accounts as if he had the stocks.  *Held,* that he was chargeable with the stocks at the highest rate they attained after the conversion.
2. The guardian charged with expenses of audit and denied commissions in this case.

March 4th 1868.    Before STRONG, READ, AGNEW and SHARS-WOOD, JJ.    THOMPSON, C. J., at Nisi Prius.

Appeals from the decree of the Orphans' Court of *Philadelphia:* Nos. 38 and 39, to July Term 1867.

John F. Lamb was, on the 2d of April 1837, appointed guar dian of Mary Ann Mapother and Sarah E. Mapother, minor children of John Mapother, deceased. The minors, together with another child, were the owners of real estate on Harrowgate lane, Philadelphia, subject to the interest of their mother, the widow of the decedent. On the distribution of the father's personal estate in June of the same year, the guardian received 16 shares of Girard Bank stock and $420 of the loan of the Lehigh Coal and Navigation Company, as the share of each of his wards. This stock and loan, although their income was charged in the guardian's accounts as being in his hands, had been sold by him shortly after he received it. The real estate was rented for five years by the mother and the guardian: the mother kept a school and afterwards a store, neither of which was prosperous.

Mary Ann reached age on December 7th 1844, and Sarah on the 18th of September 1850. No accounts of any kind were filed by the guardian, either during the minority of the wards or afterwards, until November 1856, when he filed those which are the subject of these appeals.

He had always acted as an agent and adviser of the family generally, and he went on in the same way, receiving money and paying bills and accounts, without discriminating between the receipts and payments of the wards and those for their mother and sister. After Mary Ann's majority and during Sarah's minority, the real estate was altered and improved for a hydropathic establishment, at a considerable expense, the money being raised by mortgage on it, the minor's proportion was raised under authority from the Orphans' Court. Another mortgage was afterwards given to a Mr. Shoemaker, from the proceeds of which the first mortgage was satisfied. The accounts of the guardian were carried down to the time they were filed.

This was excepted to before the auditor, but the auditor states in his report that a separation of the account at the time the minors came of age from that afterwards, would create much confusion and additional expense, and be without practical advantage. This exception appears to have been withdrawn before the court.

The account contained many items, both of credit and debit, which need not be referred to in detail.

The extracts from the report of the auditor, Joseph A. Clay, Esq., given in the opinion of the court, and those here given will show the principles of the final determination of the cases.

"The guardian charges himself with dividends on the bank stock from July 1837 to October 1841, and from October 1849 to the time of filing his account. Interest is also charged as received

[Lamb's Appeal.]

from the Lehigh Company. In one place the interest for eight years is charged in one sum, 'less twenty per cent. to cash,' and in another place two years' interest is also charged in one sum, less five per cent. * *

"The guardian is, of course, to be charged with dividends on the stock of the bank until sold and with interest on the sums received upon the sale down to the present time, and he is also chargeable with interest, at six per cent., from the time he received the Lehigh Loan to this day. No commissions are to be allowed him on either the principal or the interest.

"By first having the stocks placed in his own name—by then selling them and keeping no separate account of the proceeds, and by making entries in his accounts false in their character and peculiarly liable to mislead—he has forfeited all claim to compensation upon the amounts in question, on the most familiar and best established principles.

"The auditor would have also disallowed all commission on receipts from other sources, if he had not been satisfied that the guardian, however culpable in one respect, had really bestowed great care and attention upon the affairs of his wards. His interference in many of their domestic concerns may have been disastrous in its results and even injudicious, but while there was evidence of great trouble incurred, there was none of fraudulent intent or action, except in the instance of securities. Disputes certainly existed between the guardian and the wards and their mother, but they seem to have been of comparatively recent date and to have arisen since the failure of the hydropathic institution. * * * * * * * * *

"The counsel also objected to certain items of expenditure for board, groceries, provisions, &c. The grounds of exception were, that such matters were not properly chargeable to the wards, and that the board especially could not be allowed, as the wards always resided with their mother, who made, on the one hand, no such demand on them, while the children, on the other hand, assisted her in household duties and in keeping the school and the store.

"These grounds of objection would be valid, if the case arose under ordinary circumstances. Here, however, was a guardian acting for the whole family of his wards, receiving income and paying it out, generally for their benefit, upon a footing of unlimited confidence.

"The money was laid out for the support and maintenance of the minors, whether it took the form of a specific appropriation for necessaries, or a more legitimate payment under the name of board. The minors derived the full benefit of their income by these outlays for the family in general, and so long as in the aggregate they do not exceed a fair and reasonable aggregate for

support and maintenance, they may be allowed, not perhaps in the form claimed, but in the shape of an average allowance, in which aspect they will appear very moderate.   *   *   *   *   *   *   * When Mrs. Mapother required money for the payment of house bills, she went to Dr. Lamb, and he, incautiously perhaps, supplied her, without discriminating how much was for one child or how much for another.   This course may subject him to a charge of negligence, but it will not prevent a reasonable allowance on the grounds stated, if no culpable or fraudulent intent be shown.

"Another objection was taken on the ground of the decision in Eichelberger's Appeal, 4 Watts 84, where it is laid down, that money expended by a guardian in setting up a ward in business cannot be allowed him as a credit.   This was intended to apply to items in the present accounts, supposed to belong to the store in Frankford.   If the decision in Eichelberger's Estate can be maintained, these items, if directly paid to the wards, might be disallowed, though it would be extremely inequitable to do so without proof of the malversation which may have influenced the court in the case cited.

"In the present case, so far as the items are admitted at all, the allowance is based, as in the case of the other payments already mentioned, upon a general average for maintenance.   *   *   *

"The auditor has endeavored to apportion fairly the amount chargeable to the account of each ward out of each particular item of expenditure.   As the repairs of real estate were of a permanent character, he has not allowed any charges to Mrs. Mapother in apportioning the items relating to the outlay on this account. * *

"The interest paid on the mortgages stands on a different footing, and it is a charge accruing during every year.   As Mrs. Mapother enjoys during her lifetime the benefit of the improvements, such as they were, she should be charged with one-third of the annual expense of the moneys raised to make them."   *

After preparing his report exceptions were filed by both parties, some of which the auditor sustained and made a report substantially on the same principles and with nearly the same charges and allowances as in the original report.

By the accounts reported, he found that there was due from the guardian, on the 11th of November, 1864,

|  |  |
|---|---|
| To Mary Ann Mapother,   .   .   . | $1247.54 |
| To Sarah E. Mapother,   .   .   . | 1641.43 |

Numerous exceptions were filed on behalf of the ward, of which the following were sustained by the Orphans' Court:

Allowing the guardian credit for commissions for rent, for boarding of wards, for repairs to real estate, for articles for household consumption; in not charging him with the highest

8 P. F. Smith—10

rate at which the stock and loan were sold after the conversion, with interest, and with all the expenses of the audit.

The auditor made a second report upon the principles of the decision of the court on the exceptions, upon which the court decreed that there was due from the guardian to Mary Ann Mapother the sum of $3026.24, with interest from March 29th 1867, with auditor's fee and expenses of the audit, and to Sarah E. Mapother the sum of $3476.45, with like interest and costs.

From these decrees the guardian appealed to the Supreme Court, and assigned the decrees for error, specifying the several exceptions to the auditor's report which had been sustained by the Orphans' Court.

*W. S. Price*, for appellant.

*M. J. Micheson*, for appellee.—There is always a presumption in favor of the decisions of the lower court: Smith *v.* Ege, 2 P. F. Smith 421.    The guardian should have been charged with *compound* interest: Hughes' Appeal, 3 P. F. Smith 500.    Commissions were properly withheld: Berryhill's Appeal, 11 Casey 245; Worrell's Appeal, 11 Harris 44; Robinett's Appeal, 12 Casey 174; Holman's Appeal, 12 Harris 174; Greenfield's Estate, Id. 232; Stearly's Appeal, 2 Wright 530.

The opinion of the court was delivered, March 9th 1868, by

READ, J.—This is an appeal by a guardian from the settlement of his accounts by the Orphans' Court. He was appointed on the 2d of April 1837, guardian of Mary Ann Mapother and Sarah E. Mapother, minor children of John Mapother, who died in the preceding year, and in June 1837, he received on the distribution of the estate of their father, thirty-two shares of the Girard Bank and $840 of the Lehigh Coal and Navigation Company Loan.    One-half of those stocks belonged to each of the wards, and constituted their entire personal estate.    They were also entitled to two-thirds of an estate in Harrowgate lane, subject to the interest of their mother under the intestate laws.

In 1856 the appellant filed his account as guardian carrying the same down to that period, showing large balances against his wards.    The account was referred to Joseph A. Clay, Esq., as auditor, whose report is dated 3d November 1864, which was excepted to by the wards, and upon a hearing by the court they gave certain directions to the auditor, upon which he made a second report which is dated March 15th 1867, and which resulted in balances in favor of the wards.    This report was confirmed by the final decrees of the court, and from these decrees this appeal is taken.

This result was produced by a long and tedious examination

into the accounts and conduct of the guardian through a period
of nearly twenty years, one of the minors becoming of age on the
7th of December 1844, and the other on the 18th of September
1850.  One extract from the auditor's report will suffice to show
the grounds upon which the auditor and the court proceeded.

"The family," says the auditor, "became embarrassed, and
finally the accounts referred to the auditor were filed by the
guardian, exhibiting very considerable balances in his favor, after
exhausting the capital of the estate of his wards.  This state of
things gave rise to a protracted contest before the auditor.  Almost
every item of credit claimed by the guardian was disputed by the
wards, and proof demanded of the handwriting of every receipt
for the smallest sums.  As the parties now live in Frankford, or
its vicinity, and Mrs. Mapother and her daughters had resided
at one time in Germantown, the witnesses had to be brought from
a comparative distance, and this occasioned trouble and delay.
Other causes combined to protract the proceedings, and it was not,
indeed, until after the close of the regular meetings that one of
the most important facts of the case was discovered.  This was
the sale by the guardian of the Girard Bank stock and Lehigh
Loan, at a very early period of his trust.  As already stated, the
two wards derived from the personal estate of their father thirty-
two shares of Girard Bank stock and $840 of the loan of the
Lehigh Coal and Navigation Company.  The bank stock was
transferred to Dr. Lamb, individually, on the 13th of June 1837,
and the Lehigh loan, on the 16th of June 1838, was transferred
apparently to a purchaser.  The guardian charges himself with
the dividends on the bank stock from July 1837 to October 1841,
and from October 1849 to the time of filing his account.  Interest
is also charged as received from the Lehigh Company.  In one
place the interest for eight years is charged in one sum, 'less
twenty per cent. to cash,' and in another place two years' interest
is also charged in one sum, less five per cent.  The particularity
of these entries was well calculated to mislead and, indeed, the
heavy discount claimed, as was alleged on the orders for coal,
which were at one time commonly received for interest on Lehigh
loan, was made a subject of direct exception.  Upon an investi-
gation by the auditor, it was found that nearly all of these entries
were purely fictitious.  Except, perhaps, at the very first, Dr.
Lamb never received either dividend from the bank, or interest
from the company.  On the contrary, he sold both stock and loan
within about a year after they were transferred to him, and some
of the bank stock almost as soon as it came into his possession."

This is a type of these accounts, and is the reason amongst
others equally stringent why the court charged the appellant with
the highest price of the bank stock between the date of his transfer
of it and the failure of the bank, with interest to the date of the

auditor's report, and also with the entire expenses of the audit, and deprived him of commissions on any part of the estate. And now at the end of more than thirty years these minors, now ladies of thirty-eight and forty-five years of age, have at last reached a final settlement with their guardian. The decrees are righteous ones, and we see no reason to disturb them.

Appeals dismissed and decrees affirmed at the cost of the appellant.